State Officers — Reserves — Commission 1. A legislator commissioned in a United States Armed Forces reserve component is not an "officer of the United States" within the purview of Article V, Section 18
Oklahoma Constitution, prohibiting dual office holding, unless and until he is serving on extended active duty. 2. The phrase "not otherwise commissioned by law" as used in Article VI, Section 13 Oklahoma Constitution, relates to the ministerial duty of the Governor to provide evidence of appointment to any officer for whom evidence of appointment is not otherwise provided. The Attorney General has had under consideration your request for an official opinion on the following questions: "1. Is a member of the Legislature who also holds an officer's commission in a component of the organized military reserve forces of the United States an `officer of the United States' as contemplated by Article V, Section 18
Oklahoma Constitution, and thus ineligible, as such `officer of the United States,' to serve as a member of the Legislature? "2. What is the specific meaning and effect of the phrase `. . . not otherwise commissioned by law. . .' contained in the first sentence of Article VI, Section 13 Oklahoma Constitution, which reads as follows: `The Governor shall commission all officers not otherwise commissioned by law. . . .'?" You state that these questions arise in connection with the work of the Subcommittee on Continuing Study of the Executive and Legislative Articles of the Special Committee on Constitutional Revision of the State Legislative Council, which work is pursuant to House Joint Resolution No. 1023, First (1969) Session, Thirty-second Legislature. Article V, Section 18 Oklahoma Constitution, to which your first question is directed, reads as follows: "No person shall serve as a member of the Legislature who is, at the time of such service, an officer of the United States or State government, or is receiving compensation as such; nor shall any person be eligible to election to the Legislature, who has been adjudged guilty of a felony." We have found no Oklahoma cases directly interpretive of the provision about which you inquire. We do, however, find that the Oklahoma Supreme Court has interpreted a somewhat similar provision of more general application found in Article II, Section12 Oklahoma Constitution, which reads: "No member of Congress from this State, or person holding an office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State." In Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447 (1944), the Court held that a reserve officer in the Army of the United States called into"active military service" for the "duration of the present World War World War 11; and a period of not to exceed six months thereafter" was thereby holding an office of trust or profit under the laws of the United States and had, further, thereby vacated his office as a member of the board of regents for the University of Oklahoma held under state laws. It is to be noted that the Wimberly case decision was approved by a bare majority (five justices) of the court, with two strong dissenting opinions (representing the views of four justices) published. One of the dissenting opinions states: ". . . It is further submitted that the expression `office of trust or profit,' as used in Article II, Section 12 of our Constitution, was never intended by the framers of that document or by the people in its adoption to include or mean a position held by the citizen-soldier as an officer of the Army of the United States serving temporarily during time of war, and that such definition was not then and is not now the plain, ordinary, natural, and commonly accepted and understood meaning of such expression." Both this dissenting opinion and the majority opinion emphasized the active duty status of the officer concerned. While not explicitly discussed, all of the opinions in this case strongly imply that the mere holding of a reserve commission while in an inactive duty status would not have been held to violate the state Constitution. We are aware that at least some other jurisdictions have held contra to Oklahoma's Wimberly case. The majority opinion in Wimberly takes note of this and fully discusses and summarizes the cases decided to that time. That opinion cites annotations at 26 A.L.R. 142, 132 A.L.R. 254, 140 A.L.R. 1499, 141 A.L.R. 1525, 142 A.L.R. 1517, 143 A.L.R. 1528, and 144 A.L.R. 1513. We would call attention to further annotations at 147 A.L.R. A.L.R. 1419. 148 A.L.R. and 150 A.L.R. 1444. From the number of annotations cited it can be see that the question has been considered by appellate courts on numerous occasions especially since the start of the United States' military buildup for World War II. We have however found no case in any jurisdiction in which the holding of a reserve commission while in an inactive duty status was held violative of a constitutional provision such as ours. Such trend as is discernible in the cases decided since Wimberly is to construe such provisions more liberally in favor of the officers (See. for example. People ex rel. Flanders v. Neary, Colo., 154 P.2d 48. decided approximately a year after Wimberly, in which a District Attorney called to active duty as an and officer was held not to have vacated his state office and in fact was still entitled to his full pay and emoluments unless and until there was a showing that the office was being "harmed" by his absence. This case relied to a considerable extent, however, upon provisions of the Soldiers and Sailors' Civil Relief Act of 1940 (50 U.S.C.A., Section 501 et seq.).) In consideration of the Wimberly case. supra. and of the many other cases of other Jurisdictions studied, we conclude that the mere holding of a reserve commission while in all inactive duty status would not violate Article V, Section 18 Oklahoma Constitution. In consideration of the Wimberly case, as the only Oklahoma decision in point, we further conclude that a reserve officer on extended active duty would be in violation of said Section. We take note that there is some difference in the language of Article V, Section 18, and the language of Article II, Section 12 which was construed in the Wimberly case. That is. we would call attention to the fact that Article V, Section 18 specifically refers to "receiving compensation" as an officer of the United States. This leaves us in some doubt as to the application of this provision to a reserve Officer who, while regularly considered to be on inactive duty. nevertheless draws drill pay' or other compensation for "short tours" of duty for training. such as two week summer encampments. We resolve this doubt in favor of the officer and conclude that such an officer would not be considered in violation of the state's Constitution. either under Article II, Section 12, or under Article V, Section 18. Article VII, Section 13 Oklahoma Constitution, to which your second question relates. reads in its entirety as follows: "The Governor shall commission all officers not otherwise commissioned by law. All commissions shall run in the name and by the authority of the `State of Oklahoma.' be signed by the Governor. sealed with the Great Seal of the State of Oklahoma, and attested by the Secretary of State. When any office shall become vacant. he shall. unless otherwise provided by law, appoint a person to fill such vacancy. who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law." Such Oklahoma cases as we have found construing this section of the Constitution are for the most part concerned with the Governor's authority to appoint to fill vacancies. In only one case — Riley v. State ex rel. McDaniel, 43 Okl. 65,141 P.2d 264 (1914) — is there language directly relating to "commissioning". The opinion in that case states (at page 68 of the state reporter): "It is true that under our Constitution and laws the duty of commissioning public officers mainly devolves upon the Governor. but that situation arises out of the fact that there are a great many `officers not otherwise commissioned by law, who under the Constitution must be commissioned by the Governor, and not out of any inherent power of appointment possessed by the Governor by virtue of his office." The above quoted language apparently equates the "commissioning" of an officer with his appointment. That this is not necessarily always the case is pointed out in the following from 42 Am. Jur. Public Officers, Section 115: "Public officers, particularly those who receive their office by appointment, are generally required to be commissioned by the appointing authority, which is usually the chief executive. A commission he defined as a written authority from a competent source given to the officer as his warrant for the exercise of the powers and duties of the office to which he is commissioned. In other words, it is the written evidence of the appointment, but not the appointment itself; although in some instances they may seem inseparable because of the difficulty of showing the appointment otherwise than by showing the existence of the commission." (Emphasis added) Also in 67 C.J.S. Officers. Section 36, it is said: "A commission is not an appointment, but is evidence of all appointment. While the appointment of an officer is usually evidenced by a commission, as a general rule it is not essential to the validity of an appointment that a commission issue, and an appointment may be made by an oral announcement of his determination by the appointing power. Where the issuance of a commission is not made by law a necessary part of the appointment. the appointment is complete when the choice of the appointing officer has been made, and, where the power to issue commissions has been intrusted to an authority not the same as the appointing authority, the issuance of an commission is regarded as a ministerial act. Even if a commission is required. the appointment is complete when the commission is signed, and its sending to, or receipt by. the appointee is not necessary to a valid appointment. No set form is necessary to make a commission valid, and a commission is not void because it does not state the term for which the appointment was made. Noncompliance with a statute requiring the filing of a commission has been held to be a mere irregularity which does not affect the validity of the commission." (Emphasis added) We have considered the opinion in the Riley case, supra, in the light of the quotations from the two legal encyclopedias and conclude that the Riley case did not intend to equate commissioning with appointing in all instances. We are of the opinion that the references to commissioning the Constitution relate only to evidences of appointment rather than to the appointments per se. We further conclude then that the language "not otherwise commission by law" in Article VI, Section 13, Oklahoma Constitution. means that any office who has received a valid appointment to office but has not been provided with any evidence of his appointment may obtain such evidence of his appointment in the form of a commission from the Governor. In this case, the issuance of the commission would be a ministerial act on the part of the Governor. See also 42 Am. Jur. Public Officers, Section 116. In summary and in answer to your request then it is the opinion of the Attorney General that: 1. A member of the legislature holding a commission in a reserve component of the Armed Forces of the United States is not an "officer of the United States" within the purview of Article V, Section 18 Oklahoma Constitution, unless and until he is serving on extended active duty; and 2. The phrase "not otherwise commissioned by law" as used in Article VI, Section 13, Oklahoma Constitution, relates to the ministerial duty of the Governor to provide evidence of appointment to any officer for whom evidence of appointment to office is not otherwise provided. (Hugh Collum)